Rich Curtner
Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
550 West Seventh Avenue, Suite 1600
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>vs.<br><br>TARA SHAE STUART,<br><br>      Defendant. | Case No. 3:05-cr-0090-JWS<br><br>**DEFENDANT'S<br>SENTENCING MEMORANDUM** |

I. <u>INTRODUCTION</u>

   Tara Stuart is the 24-year-old mother of twins, who are now residing with Tara's husband in Wrangell, Alaska.  Tara's children were born 18 months before her arrest and incarceration in January 2004.  She had been with her children about one-half of their lives.

   In her pre-teens, Tara was involved in ballet, jazz, and tap dancing, and swimming and gymnastics.  She was also active in the church, Girl Scouts, and the drill team.  (<u>See</u> Presentence Report (PSR), p. 6, ¶ 37.)

However, Tara suffered an extremely difficult adolescence. Tara started using alcohol and drugs at the age of 13. (PSR, pp. 14-15, ¶¶ 55-60.) She was found to be a Child In Need of Aid and placed in foster care at 14. (PSR, pp. 7-9, ¶¶ 38-41.) She has been hospitalized numerous times for psychiatric and drug treatment since the age of 15. (See PSR, pp. 11-14, ¶¶ 50-54.) Her continued substance abuse problems predictably lead to her imprisonment in the Bureau of Prisons.

On her first offense, Tara was sentenced to the Federal Bureau of Prisons for 33 months. Tara complete the 500-hour residential Drug and Alcohol Program at BOP and was transferred to the Cordova Center in June 2005. Tara matured while in federal prison and benefitted greatly from the drug treatment she received there. However, her followup treatment plan in Anchorage was ill-advised, to say the least.

Tara was in Anchorage while her family support was in southeast Alaska. Her followup drug treatment required her to take a bus across town three times a week. Tara worked all night at a Carrs store in one of the worst parts of town.

Tara survived two months in Anchorage before she accepted some pills from another employee that would help her stay awake at night working the "graveyard shift." Those pills caused a positive drug test. When confronted weeks later by the drug test, Tara panicked and left the Cordova Center. She was apprehended at Carrs four days later.

For her walking away from the Cordova Center, Tara already has been severely punished by BOP. That poor decision has cost her another year in prison.

This court can impose additional incarceration. Tara requests that any additional time be imposed as community confinement/home detention in Juneau, with her mother.

II.     THE OFFENSE

Tara's federal case manager at the Cordova Center, Melanie Edwards, best describes the situation Tara found herself in in Anchorage:

> . . . She acquired a job as a cashier at Carrs/Safeway in the store located on 13th and Gambel [sic]. Each time I spoke with her supervisor he was extremely pleased with her performance. He stated that she attended the orientation/training and passed the test "in flying colors" and further stated that most people don't pass the test the first time, "even some managers don't accomplish that the first time through". After working there a very short while she was placed on the 11 PM to 7 AM shift and according to her supervisor this is considered as a promotion. She made more money due to the shift differential and she worked without supervision.

Letter from Melanie Edwards, attached as Exhibit A, at p. 1.

> . . . Her performance at Carrs/Safeway was stellar and they were extremely satisfied.
>
> Unfortunately, her assignment to the store on 13th and Gambel [sic] was not a wise decision on our part due to the environment and her assignment to the night shift. Tara had expressed to me that the clientele was not a positive influence to say the least. I also learned that she was the only cashier in the store and she had store security until 2AM and the night stockers until they were complete with their chores. The rest of the night she was there alone. There were many times she encountered unhappy customers and those regularly under the influence of drugs and/or alcohol. She had to make quick decisions as to how to handle them with a win/win result. The night stockers were there if she needed assistance, if she could get their attention. They worked with head phones on and were in their own world.

Id. at p. 2.

Ms. Edwards also described the circumstances that prompted Tara to walk away from the Cordova Center:

> When I brought her into my office to talk about the positive UA, I asked her, "Have you done anything wrong that would necessitate me to write an incident report?" She was quite taken aback with that question and she responded after obviously running things through her mind and said, "No." . . .
>
> I let her think about it and really pushed her to think of something very serious she may have done and she eventually said the only thing she could possibly have done was to take some over the counter meds that helped her to stay awake.
>
> . . . .
>
> I explained that she would have to go back to jail as we had a zero tolerance level to any drug/alcohol usage and she would have to go through the disciplinary process and she stood to lose all of her time earned from the RDAP program and possible loss of other good time and could be put back in the federal system to complete her sentence. . . .
>
> . . . .
>
> . . . It is my opinion that she panicked and reacted poorly to the information I had given her about returning to prison.

Id. at pp. 3-4.

III.   SENTENCING OPTIONS

The advisory guidelines suggest a sentencing range of four to ten months. This court has the authority to impose a sentence within that range that would substitute home detention for imprisonment.

Tara Stuart served approximately one year in the custody of the Bureau of Prisons for her original offense. Her panicked decision to walk away from the Cordova Center for four days has cost her almost another year of incarceration, without consideration of what this court may impose.

Under these circumstances, the sentencing factors under 18 U.S.C. § 3553(a) fully support a sentence that would address Tara's continued rehabilitation in the community where she has family support. Living in Anchorage, with a job working all night in one of the worst sections of town, was not a good plan to followup on the progress that Tara made in the DAP program.

A much better alternative would be for a sentence of four months home detention in her mother's home in Juneau, to follow Tara's release from BOP custody on July 31, 2006. There, Tara will have the support of her mother, and access to better treatment and employment opportunities than exist in Anchorage.

The United States Probation Officer interviewed Tara's mother about the possibility of having Tara return to her mother's home in Juneau through the home confinement program upon Tara's release from prison. (PSR, p. 10, ¶¶ 45-46.) Tara's mother works for the Department of Health and Social Services for the State of Alaska and is aware of the substance abuse treatment programs available there. Tara's mother was encouraged by Tara's progress while in the DAP program, and thought that Tara had matured, was taking responsibility for her past conduct, and had developed a positive attitude. (PSR, p. 11, ¶ 47.)

Tara reflects this attitude in her letter to the court (attached as Exhibit B). She is committed to continuing on her path to a drug-free life and reunification with her family. A release plan to her mother's home in Juneau, rather than additional incarceration beyond that already imposed, would maximize her chances of success.

DATED at Anchorage, Alaska this 17th day of February, 2006.

Respectfully submitted,

s/ Rich Curtner
Federal Defender
Alaska Bar No. 8706013
550 West 7th Avenue, Suite 1600
Anchorage, AK  99501
Ph:  (907) 646-3400
Fax:  (907) 646-3480
rich_curtner@fd.org

Certification:

I certify that on February 17, 2006, a copy of the foregoing document, with attachments, was served electronically on:

Stephan Collins, Esq.

and a copy was hand-delivered on:

United States Probation/Pretrial Services Office
222 West 7th Avenue, No. 48, Room 168
Anchorage, AK  99513-7562

s/ Rich Curtner