November 18, 2005

Your Honor,

Allow me to introduce myself to you. I am Melanie Edwards, former Federal Case Manager at Cordova Center. I have previously retired from the State of Alaska, Department of Corrections as a 20 year sergeant after 28 years working in corrections. I worked seven plus years with juveniles and the remainder years working in the adult system all local to the Anchorage Bowl. I have worked with many prisoners during this time. I never looked at the prisoner as the problem but looked within the prisoner for the problem and counseled, classified, disciplined, and counseled some more to help find ways to resolve or help the inmate. I say all of this to say I am not new to the field and am rather seasoned to games that can be played.

Tara Stuart was on my case load when I was employed with Cordova Center. I would like to tell you a little about her through my eyes and what I learned when working with her. Once she arrived I established a program for her that consisted of her finding a job within 15 days of arrival, placed her in drug and alcohol after care program, acquiring a savings account and lastly she was to either work towards home confinement or save until released to probation so she could afford housing upon release as well as a ticket home to her husband and children.

I have to say she met each requirement of her program all within established times and without prodding from me. She acquired a job as a cashier at Carrs/Safeway in the store located on 13th and Gambel. Each time I spoke with her supervisor he was extremely pleased with her performance. He stated that she attended the orientation/training and passed the test "in flying colors" and further stated that most people don't pass the test the first time, "even some managers don't accomplish that the first time through". After working there a very short while she was placed on the 11 PM to 7 AM shift and according to her supervisor this is considered as a promotion. She made more money due to the shift differential and she worked without supervision.

She attended her aftercare program as scheduled and was late only one time. After that her counselor worked with her and changed the hours of her meetings to the evening hours to accommodate her sleep schedule and she was not late again after that. Her counselor and I remained in contact to work together on issues that may have come up to remain consistent as to our approach so that we were both supporting her equally.

She established her bank account after her second pay check and was making regular deposits with each pay check; therefore, making strides towards saving money as required.

While counseling with Tara we talked of her past and previous treatments. As a child she was introduced to the use of drugs through her father at the age of 13. She had troubled times during her adolescent years and treatment was not successful as she was not ready to deal with her issues. Eventually her usage resulted in her current charges.

While incarcerated she entered into the RDAP 500 hour drug/alcohol program eventually acquiring and maintaining minimum custody. As a result of the RDAP program she was given "time off" her sentence and allowed early release to the Cordova Center to begin reintegration to society.

Her previous work history was minimal at best and she had only short time positions as a maid or cashier. She didn't last at the positions due to her drug usage and continued influence from her father and subsequently her husband. Her performance at Carrs/Safeway was stellar and they were extremely satisfied.

Unfortunately, her assignment to the store on 13th and Gambel was not a wise decision on our part due to the environment and her assignment to the night shift. Tara had expressed to me that the clientele was not a positive influence to say the least. I also learned that she was the only cashier in the store and she had store security until 2AM and the night stockers until they were complete with their chores. The rest of the night she was there alone. There were many times she encountered unhappy customers and those regularly under the influence of drugs and/or alcohol. She had to make quick decisions as to how to handle them with a win/win result. The night stockers were there if she needed assistance, if she could get their attention. They worked with head phones on and were in their own world.

Tara eventually was terminated from the job due to an error in judgment but not knowing she was breaking the rules. When customers came to the store without their Carrs Card that would enable them to receive discounts on products and their phones numbers were no longer valid, Tara would attempt to soothe the situation by using a number of her own. She was totally unaware that she was giving a bonus to the other person by using their phone number. The only number she knew to use was her mother's and as a result, due to the zero tolerance policy of upper management the fired her, rather than suspend her, as her immediate supervisor wanted them to do. Her supervisor truly fought to keep Tara employed but to no avail. He was sick about upper management's decision. She would have been able to go back to Carrs/Safeway to work after a year's absence. When talking with Tara she vaguely remembered them talking about the card in training, but she had never see or used a card before she didn't absorb the information.

Shortly before her termination, she gave a UA that tested positive for methamphetamine usage. The test results were not returned to the facility from the company that performed the test for approximately 3 weeks. During that time